Judgment rendered May 21, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,268-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

JOHNNY THOMPSON, JR.                        Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 391,914

Honorable Michael A. Pitman, Judge

* * * * *

LOUISIANA APPELLATE PROJECT            Counsel for Appellant
By: Douglas Lee Harville

JAMES E. STEWART, SR.                  Counsel for Appellee
District Attorney

MARGARET E. RICHIE GASKINS
VICTORIA T. WASHINGTON
Assistant District Attorneys

* * * * *

Before THOMPSON, ROBINSON, and MARCOTTE, JJ.

**THOMPSON, J.**

A dispute over a small unpaid debt erupted during a domino game and the victim was beaten unconscious, robbed, and while unconscious relocated over half a mile and left by the defendant. The victim never recovered from his extensive injuries and was in a vegetative state until his death from sepsis while still hospitalized. After being convicted by a unanimous jury of second degree robbery, the defendant was ordered to serve the maximum 40-year sentence, which the trial court indicated was appropriate due to the brutal attack and cruel treatment of the victim. Considering the violent nature of the attack and resulting injuries, and that the trial court appropriately considered all mitigating and aggravating factors in fashioning its sentence, as well as for the reasons more fully detailed below, we affirm the defendant's conviction and sentence.

## FACTS AND PROCEDURAL HISTORY

Johnny Thompson, Jr. ("Thompson") was charged with one count of second degree robbery, in violation of La. R.S. 14:64.4, by the Caddo Parish District Attorney. The State alleged the events giving rise to the charges occurred on or about April 3, 2022, when Thompson took money by force, violence, and intimidation from, and intentionally inflicted serious bodily injury to, Robert Wayne Williams.

Thompson's jury trial was held on May 6 and 7, 2024. Testimony and evidence introduced at trial established the facts of the incident, as follows. On April 3, 2022, Rose Marie Edwards noticed a man lying face down in front of a vacant house near her home on Kelsey Street in Shreveport, Louisiana. The man told her he was all right; however, he was still lying there when Edwards passed by the house again 30 minutes later. At that

time, the man indicated he was unable to get up. Edwards went back inside her home and called 911.

Shreveport Police Department ("SPD") Corporal Michael Milczarski testified that he responded to the 911 call at 11:58 AM. Upon arriving he observed a black male lying on his back in front of the vacant house on Kelsey Street. The man was wearing a black jacket, torn gray undershirt, and camo pants down around his shins. Cpl. Milczarski described that the man was mumbling, disoriented, and unable to clearly communicate his name. The victim was ultimately identified as Robert Wayne Williams by an EBT card found on his person. Cpl. Milczarski testified that Williams had bruising to his torso and right arm, scrapes and bruising on his right hand, a significant scrape on his knee, and his face was swollen around his eyes. Cpl. Milczarski testified he asked Williams questions about what happened; Williams incorrectly stated that he was in a park and had been dropped off there. Williams was unable to walk, so EMS placed him on a stretcher and transported him to the hospital for treatment.

SPD Detective Gilbert Monereau was assigned to investigate Williams' case. Det. Monereau interviewed Sarah Walker-Blocker, who was a friend of both Williams and Thompson. She provided a statement to police that Thompson injured Williams during an incident that took place in the early morning hours of April 3, 2022, at 1350 Audrey Lane in Shreveport, which is approximately 0.7 miles from the vacant house where Williams was found.

Walker-Blocker also testified in person at trial. She testified that on the night of the incident, after midnight but before sunrise, Williams was at the Audrey Lane home in Shreveport drinking and playing dominoes with

2

her at the table. Williams removed $40 from his pocket and placed it on the table. After a couple of hours, Thompson arrived at the house. Williams had previously borrowed money from Thompson but had not paid the money back. Thompson saw the money on the table, grabbed it, and asked Williams about the rest of the money Williams owed him. When Williams stood up and as he began to explain that he would come up with the rest of the money, Thompson struck him in the face, knocking him to the floor. Thompson then got on top of Williams and continued to hit him in the face while he lay on the floor. Walker-Blocker asked Thompson to stop hitting Williams, but he did not stop hitting him until Williams was unconscious.

Walker-Blocker testified that once Williams was unconscious, Thompson searched his body and removed additional money from his front pocket. While Williams was still unconscious, Thompson dragged his body out of the door by pulling on one of his arms. Walker-Blocker stayed inside the house, closed the door, and locked it. She did not know what the men did or where they went afterwards. She did not call the police immediately after the incident. Although Walker-Blocker did testify at trial, she stated she was unhappy about having to testify and did not want to be involved in the case because both men were her friends.

Williams' brother, Mark Harris, testified that Williams remained in a vegetative and unresponsive state from the time EMS transported him to the hospital on April 3, 2023, until his death in June 2023. Harris testified that Williams was transferred from the hospital to multiple rehabilitation facilities in the weeks before his death. Harris visited his brother in the rehabilitation centers and attempted to communicate with him, but Williams was unable to respond or move his own body, was disfigured, lost a

significant amount of weight, and was extremely ill. Williams' condition never improved. Williams developed sepsis, which caused organ failure and his eventual death weeks after his attack and hospitalization.

At the conclusion of the trial Thompson was found guilty as charged by a unanimous jury. Thompson filed a timely motion for post-judgment verdict of acquittal. After a sentencing hearing, the trial court denied the motion. During the sentencing hearing, the trial court methodically considered each aggravating and mitigating circumstance provided in La. C. Cr. P. art. 894.1 and sentenced Thompson to the maximum sentence of 40 years' imprisonment at hard labor. Thompson filed a timely motion to reconsider sentence which was denied without a hearing. This appeal, asserting as excessive Thompson's 40-year sentence, followed.

## DISCUSSION

**Assignment of Error: When justifying its maximum sentence for Thompson, the trial court concluded that he beat Mr. Williams so badly that Mr. Williams never recovered and eventually died because of the beating. However, the record on appeal fails to establish a causal relation between Thompson's conduct and Mr. Williams' medical condition and death. Therefore, the trial court's sentence is unreasonably harsh, this Court should vacate Thompson's sentence, and it should remand this matter for resentencing.**

In his sole assignment of error, Thompson argues that his sentence of 40 years' imprisonment at hard labor is excessive. At sentencing, the trial court determined that Thompson severely beat Williams, and that he never recovered from those injuries and subsequently passed away. Thompson argues that conclusion about the cause of Williams' death led the trial court to impose the maximum sentence, but at trial that the State offered no medical records to support the trial court's conclusions regarding Williams' death. Thompson asserts the State did not offer testimony from treating

4

physicians, caregivers, or experts to attempt to connect Thompson's alleged conduct to Williams' medical problems, injuries, or death.

Thompson argues that Williams was able to communicate with first responders upon their arrival at the scene and that Williams' symptoms were consistent with being inebriated or suffering a concussion. The first responders noted Williams was the victim of an "assault," but Williams did not have any broken bones or head abnormalities. His chest, lung sounds, pelvis, left arm, right arm, and right leg had no abnormalities. Williams had a normal neurological baseline and was sitting during transportation by first responders.

Thompson acknowledges that Williams' family testified about his declining health and ultimate death. However, he asserts the State failed to offer medical evidence to establish a causal connection between Thompson's conduct and the testimony concerning Williams' medical condition, decline, and death. Thompson argues that the trial court's sentence lacked a factual basis in the record because it was based on a purported causal connection between Thompson's conduct and Williams' medical condition and death. Therefore, Thompson argues that his sentence is excessive, and it should be vacated and the matter remanded for resentencing.

In response to Thompson's assignment of error, the State argues that Walker-Blocker's statement to police as well as her testimony at trial unequivocally established that Williams beat Thompson severely, striking him until he lost consciousness, and took money out of Williams' pocket. Her testimony also established that prior to the incident, Williams was able to stand, talk, and play dominoes. The testimony of Harris, Williams' brother, established that after being hit on the head numerous times,

5

Williams was disfigured and unable to move or communicate on his own. The jury accepted the lay testimony of Walker-Blocker, Harris, and Det. Monereau and drew reasonable inferences based on that testimony. The State argues that medical evidence is not required to establish a causal connection between being beaten on the head and subsequently being unable to independently move or communicate. We agree that the trial court's determination that the beating and robbery caused Williams' condition was reasonable. The considerations set forth in La. R.S. 14:64.4 focus on Thompson's intentionally inflicting serious bodily injury to Williams while taking something of value from him. The extent of the beating – to the point of unconsciousness – is the focus in reviewing Thompson's sentence, not Williams' ultimate death. It is the facts leading up to and surrounding the intensive beating administered by Thompson and the injuries received by Williams that are the focus of our review.

La. R.S. 14:64.4 provides that second degree robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another when the offender intentionally inflicts serious bodily injury. Whoever commits the crime of second degree robbery shall be imprisoned at hard labor for not less than three years and for not more than forty years.

An excessive sentence claim is reviewed by examining whether the trial court adequately considered the guidelines established in La. C. Cr. P. art. 894.1, and whether the sentence is constitutionally excessive. *State v. Dowles*, 54,483 (La. App. 2 Cir. 5/25/22), 339 So. 3d 749; *State v. Vanhorn*, 52,583 (La. App. 2 Cir. 4/10/19), 268 So. 3d 357, *writ denied*, 19-00745 (La. 11/19/19), 282 So. 3d 1065. First, the record must show that the trial court

6

took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. The trial court is not required to list every aggravating or mitigating circumstance, so long as the record reflects that it adequately considered the guidelines of the article. *State v. Smith*, 433 So. 2d 688 (La. 1983); *State v. Croskey*, 53,505 (La. App. 2 Cir. 5/20/20), 296 So. 3d 1151. The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, and employment record), prior criminal record, seriousness of offense, and the likelihood of rehabilitation. *State v. Jones*, 398 So. 2d 1049 (La. 1981); *Dowles*, *supra.* There is no requirement that specific matters be given any particular weight at sentencing. *Dowles*, *supra.*

Second, the court must determine whether the sentence is constitutionally excessive. *Dowles*, *supra.* Constitutional review turns upon whether the sentence is illegal, grossly disproportionate to the severity of the offense, or shocking to the sense of justice. A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than the purposeless infliction of pain and suffering. A sentence is grossly disproportionate if, when the crime and punishment are viewed in light of the harm to society, it shocks the sense of justice. *State v. Baker*, 51,933 (La. App. 2 Cir. 4/11/18), 247 So. 3d 990, *writ denied*, 18-0858 (La. 12/3/18), 257 So. 3d 195, and *writ denied*, 18-0833 (La. 12/3/18), 257 So. 3d 196.

The trial court has wide discretion in the imposition of sentences within the statutory limits, and sentences should not be set aside as excessive

in the absence of manifest abuse of discretion. *Dowles*, *supra.* A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case, and, therefore, is given broad discretion in sentencing. *Id.* Absent specific authority, it is not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence. *Id.* As a general rule, maximum sentences are appropriate in cases involving the most serious violation of the offense and the worst type of offender. *State v. Taylor*, 41,898 (La. App. 2 Cir. 4/4/07), 954 So. 2d 804.

We find the trial court adequately considered La. C. Cr. P. art. 894.1 for sentencing. The trial court considered each factor provided in Article 894.1 on the record, and determined that several aggravating circumstances existed, and no mitigating factors existed. Thompson's severe battery of Williams over a small amount of money manifested deliberate cruelty toward the victim. Thompson beat Williams unconscious and then dragged his limp body out of the house, relocating him over half a mile away, causing more scrapes and injuries, until leaving Williams unconscious before he was discovered hours later. Williams' condition when he was discovered, including scrapes to his hands and legs and his pants being down around his shins, indicated he was dragged while unconscious for quite a distance by Thompson. The vicious attack and brazen display of brutality by dragging an unconscious victim is alarming and was appropriately considered by the trial court. The trial court specifically noted that Thompson relocated Williams' severely injured body in an attempt to conceal his crime. The trial court also noted that during jail calls, Thompson instructed his sister to persuade witnesses to provide false information about

8

the incident in an attempt to influence the outcome of the criminal proceedings.

In imposing the maximum sentence, the trial court considered Thompson's experience in the criminal justice system and his criminal history, including prior convictions for possession with intent to distribute a Schedule I controlled dangerous substance, possession of marijuana second offense, driving while intoxicated first offense, and second degree battery. Thompson's current offense of second degree robbery presents an escalation in both seriousness and violence of his well-documented criminal behavior. The trial court specifically noted Thompson's callous indifference to the older and defenseless victim, which the trial court concluded indicates Thompson is likely to re-offend.

The factor the trial court granted great weight at sentencing was the seriousness of the offense. The trial court noted there was no strong provocation for Thompson's actions, and he severely beat Williams over a small debt. The trial court determined, based on the evidence presented at trial, that Williams never fully recovered from the injuries inflicted upon him. The maximum sentence is reserved for the most egregious and blameworthy offenders. The trial court stated after imposing the maximum sentence: "[T]his is not your ordinary second degree robbery situation." We agree with the trial court's determination regarding Thompson's crime and find that beating a robbery victim so severely that he is left in a vegetative state in order to rob him of a very small amount of money is the most egregious and blameworthy form of second degree robbery. The extent of brutality and resulting damages were clearly contemplated by our legislature in fashioning a sentencing range that included imprisonment for up to forty

9

years.  We agree Thompson's actions are of the kind, nature, and extent that the maximum sentence is appropriate.  Therefore, we conclude the trial court did not abuse its discretion in imposing the maximum sentence of 40 years under these specific facts and circumstances, and Thompson's sentence should be affirmed.

## CONCLUSION

For the reasons set forth above, the conviction and sentence of the defendant, Johnny Thompson, Jr., are affirmed.

**AFFIRMED.**